George VanLEEUWEN, Herbert C. Coleman, William A. Kessi, Ed Ammon, and Fred Kaser, Plaintiffs,

v.

The FARM CREDIT ADMINISTRATION; Donald J. Wilkinson; the Federal Intermediate Credit Bank of Spokane, Washington; Larry K. Butterfield; Twelfth Farm Credit District; and Ronald Bokma, Defendants.

Civ. No. 83–1413–PA.

United States District Court, D. Oregon.

Dec. 12, 1984.

---

See also 600 F.Supp. 1173.

William D. Brandt, Ferder, Ogdahl & Brandt, Salem, Or., Henry A. Carey, Henry A. Carey, P.C., Portland, Or., for plaintiffs.

Clifford N. Carlsen, Jr., R. Alan Wight, Richard A. Edwards, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for defendants The Federal Intermediate Credit Bank of Spokane, Wash., Larry K. Butterfield, Twelfth Farm Credit Dist. and Ronald Bokma.

Charles H. Turner, U.S. Atty., Jack G. Collins, Asst. U.S. Atty., Portland, Or., Richard K. Willard, Acting Asst. Atty. Gen., Sandra M. Schraibman, Stanley Dalton Wright, Wendy B. Kloner, U.S. Dept. of Justice, Civ.Div., Washington, D.C., for defendants The Farm Credit Ass'n and Donald J. Wilkinson.

PANNER, Chief Judge.

Plaintiffs are five shareholders and former directors of the Willamette Production Credit Association (WPCA). Defendants are The Farm Credit Association (FCA); its Governor, Donald J. Wilkinson; The Federal Intermediate Credit Bank of Spokane, Washington (FICB); its President, Larry K. Butterfield; the Twelfth Farm Credit District; and the Chairman of its Board, Ronald Bokma. Plaintiffs' first complaint alleged that the FCA improperly devalued security on loans and charged off assets when performing a special audit of the WPCA's books. On October 5, 1983, I restrained defendants from appointing a receiver for the WPCA and from beginning its liquidation. On October 26, 1983, I granted a preliminary injunction which declared the FCA's June 30, 1983, special audit to be null and void, set aside the August 10, 1983, order of the FCA gover-

nor, enjoined defendants from soliciting or assisting any WPCA borrower to transfer to the Central Oregon Production Credit Association, and restored the status quo of the WPCA to what it was as of August 9, 1983 (this restoration included reinstatement of plaintiffs as WPCA directors, reinstatement of the WPCA's bylaws, and withdrawal of a finding of impairment of the WPCA's stock). *See generally Van-Leeuwen v. The Farm Credit Assoc.*, 577 F.Supp. 264 (D.C.Or.1983).

On May 15, 1984, I dismissed this action with prejudice. My dismissal was based on a stipulated agreement filed with the court and signed by all parties. *See* Appendix I, Stipulation and Agreement of Dismissal. The parties agreed that the WPCA was in default and insolvent. They further agreed that, based on an adequate second examination of the WPCA, the FCA had the authority to place the WPCA into involuntary liquidation. The WPCA requested the FCA approve the Board's March 8, 1983, resolution and place the WPCA in voluntary liquidation in accord with that resolution (except for item 2). The FCA agreed to approve the charter of a new production credit association in accordance with the terms of a May 4, 1984, letter of Governor Wilkinson. The parties agreed to dismissal with prejudice and that each party would bear its own costs and attorneys' fees.

## DISCUSSION

On June 18, 1984, plaintiffs filed a related case, *Coleman, et al. v. Federal Intermediate Bank of Spokane, Washington, et al.*, CV 84-6251E–PA, involving essentially the same parties. I dismissed that case on the grounds that it was barred by res judicata.

On September 25, 1984, plaintiffs filed a motion to set aside judgment, to show cause, and for leave to file an amended complaint in the present case. After a hearing on that motion and extensive briefing by all parties, I grant plaintiffs' motion to set aside the judgment pursuant to Fed.

R.Civ.P. 60(b)(6). I will hold an evidentiary hearing on whether defendants have violated the terms of the stipulation. I grant plaintiffs' motion to file an amended complaint. I will not decide plaintiffs' motion for an order to show cause until the evidentiary hearing is held.

Plaintiffs ask that the judgment in this case be set aside pursuant to Fed.R.Civ.P. 60(b), subsections (1), (2), (3), or (6). Rule 60(b) states, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, ... for the following reasons: (1) mistake, inadvertance, surprise, or excusable neglect; (2) newly discovered evidence by which due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment ....

## RELIEF FROM JUDGMENT PURSUANT TO FED.R.CIV.P. 60(b)(6).

■ Relief under subsection (6) can be obtained only for reasons other than the five listed in subsections (1)–(5) of the rule. *Corex Corp. v. United States*, 638 F.2d 119, 121 (9th Cir.1981). Subsection (6) only applies where there are extraordinary circumstances. *Id.* A motion under Rule 60(b) is within the district court's discretion and is reviewed only for an abuse of that discretion. *United States v. Sparks*, 685 F.2d 1128, 1130 (9th Cir.1982). A party's inability to seek timely relief under Rule 60(b)(3), which is brought about by repudiation of the settlement agreement by the other party, might constitute an extraordinary circumstance sufficient to invoke Rule 60(b)(6). *Id.* at 1131. Subsection (6) gives the district court the power to vacate judgments "whenever such action is appropriate to accomplish justice." *Id.*, (*quoting Klapprott v. United States*, 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 1099 (1949)).

■ Upon repudiation of a settlement agreement which terminates litigation pending before it, a district court has the authority under Fed.R.Civ.P. 60(b)(6) to vacate the prior dismissal order and restore the case to its docket. *Fairfax County-wide Citizens v. Fairfax County*, 571 F.2d 1299, 1302–03 (4th Cir.), *cert. denied*, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978). The *Fairfax* court stated that the district court can only enforce a settlement agreement if the agreement had been approved and incorporated into the court's order or there is another basis for jurisdiction. *Id.* Otherwise, after the motion to set aside judgment is granted, the case must be litigated.

■ In *Arco Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976), the court stated that the district court was "clearly" correct in vacating its order of dismissal and enforcing a settlement agreement repudiated by the defendant when the agreement was the basis for the dismissal. Courts retain inherent power to enforce agreements which settle litigation pending before them. *Id.* When a settlement agreement is repudiated, a motion pursuant to Rule 60(b)(6) for relief from the court order is appropriate. *Backers v. Bit-She*, 549 F.Supp. 388, 389 n. 2 (N.D.Cal.1982).

■ These cases establish that repudiation of a settlement agreement can be an "extraordinary circumstance" as required by Rule 60(b)(6) for relief from a judgment for "other reasons." They further suggest an evidentiary hearing is appropriate to determine whether there has been a repudiation of a settlement agreement. Once a judgment is vacated under Rule 60(b)(6), the court can enforce the original agreement if it has been the basis for dismissal and incorporated into the court's order or the case can proceed to a trial on the merits.

The settlement agreement in the present case states that the FCA approves voluntary liquidation of the WPCA according to terms contained in the March 8, 1984, Reso-

lution of the Board of Directors of the WPCA with the exception of No. 2. Therefore, it appears that the terms of the resolution as well as those of the actual "Settlement Agreement" are the terms of the settlement.

■ Plaintiffs allege numerous actions by defendants which, if true, constitute violations of the settlement agreement. These alleged actions include: lack of properly promulgated regulations leading to a "fire-sale" approach to liquidation, filing an action against the Board and its counsel for attorneys' fees, filing materials in state court which are under a protective order of this court, failure to provide meaningful reports to the directors of the WPCA, and fraudulent representations concerning class two loans. *See* Plaintiffs' Reply Memorandum in Support.

## LACK OF PROPERLY PROMULGATED REGULATIONS.

The March 8 WPCA resolution states, in part:

> [I]t is in the best interest of the shareholders of the WPCA to voluntarily liquidate the WPCA pursuant to Section 1130 of the Farm Credit Regulations subject to the satisfaction of the following conditions by the FICB and the FCA:
>
> . . . .
>
> 5. FICB will appoint a liquidating agent and WPCA will be liquidated under the Bank's regular · plan of liquidation. . . .

Plaintiffs' Memorandum in Support, Stipulation and Agreement of Dismissal, Exhibit D, pp. 4–5. The only FCA regulation referring to liquidation procedures is 12 C.F.R. § 611.1140. Section 611.1140 states, in relevant part:

> The board of directors of an association, by the adoption of an appropriate resolution, may place an association in voluntary liquidation, subject to approval of the bank board and the FCA, whereupon the supervising bank shall appoint a liquidating agent . . . .

Plaintiffs allege that defendants' failure to promulgate more specific regulations for liquidation and their failure to actually have a "regular" liquidation plan promulgated under the requirements of the Administrative Procedures Act (APA) is a violation of the settlement.

## "FIRE–SALE" APPROACH TO LIQUIDATION.

The March 8 WPCA resolution states that one of the major objectives of the plan is to safeguard against a "fire-sale" approach to liquidation. Plaintiffs contend that the WPCA is experiencing losses from defendants' use of a "fire-sale" approach to liquidation and that these losses could be avoided if there were regulations governing liquidation.

If defendants are engaging in a fire-sale approach, it would be a violation of one of the objectives of the agreement. Plaintiffs also allege that the way to avoid a fire-sale approach is by correctly promulgating regulations. It may be that failure to promulgate regulations for liquidation under the APA is, itself, a violation of the agreement. It may also be that failure to promulgate these regulations did lead to a "fire-sale" approach to liquidation in violation of the agreement.

## FILING AN ACTION AGAINST THE BOARD.

■ The settlement agreement states that each of the parties will pay its own attorneys' fees. Plaintiffs argue that the WPCA was the real party to this agreement and that a resolution passed by the board to pay attorneys' fees for this litigation was approved by the agreement. Defendants argue that the individual plaintiffs were responsible for their own fees. Defendants have filed suit in state court to recover these fees. Plaintiffs contend the filing of this suit is a violation of the settlement agreement. Whether this is, indeed, a violation depends on an interpretation of the agreement. It is within this court's jurisdiction, not the state court's, to determine what is a proper interpretation of the agreement. *Arco v. Allied, supra.*

Plaintiffs wish to file an amended complaint which asks that I enjoin the state

court litigation. Defendants argue that this court does not have jurisdiction because there is no diversity of citizenship between the parties. Defendants also argue that such an injunction is prohibited by 28 U.S.C. § 2283 (1978). Section 2283 states that a United States court may not grant an injunction to stay state court proceedings except as expressly authorized by Congress or where necessary in aid of its jurisdiction or to protect its judgment.

 If a proceeding in state court is ancillary to a case in federal court, the federal court may enjoin the state court proceedings, regardless of lack of diversity of citizenship. *Pacific Tel & Tel Co. v. Star Publishing Co.*, 2 F.2d 151 (W.D. Wash.1924).

I have temporarily enjoined the state court proceedings to aid in enforcing the judgment in this case.

ALLEGED VIOLATION OF THE COURT'S PROTECTIVE ORDER.

Plaintiffs allege that defendants violated my protective order of May 10 by appending to their state court complaint materials making specific references to loan amounts, borrowers, and activities of the directors regarding those borrowers. Plaintiffs argue that this action also violates 12 C.F.R. § 618.8320 which requires confidentiality of recommendations of loan committees and reports of inspectors, fieldmen, investigators, and appraisers.

My protective order requires the clerk to seal an exhibit called "The Farm Credit Administration Special Examination Willamette Production Credit Association, November 25, 1983," and orders that neither plaintiffs nor defendants shall disclose the names of any borrowers, loan account numbers of such borrowers or other information relating to such borrowers in that exhibit until further order of the court. The nonfederal defendants argue that the protective order relates to a different document than the one submitted to state court and that the documents submitted to state court do not contain loan account numbers of borrowers or the amounts of the loans. These defendants also argue that, to the extent any borrowers were identified by name, this information "apparently" was already a matter of public record. They state that this information was necessary evidence and that there was no intent to violate the protective order.

My order protected the information contained in the document and not just that specific document. In order to rule on this issue I must examine a copy of the document filed in state court. If the information in the submitted report is the information covered by my order, then defendants would be in violation of my May 10 protective order.

FAILURE TO PROVIDE REQUIRED REPORTS.

The settlement agreement requires that regular reports relating to the liquidation be provided to the WPCA Board. Plaintiffs allege that the defendants have failed to provide meaningful reports to the directors as required. If these allegations are true, the defendants would be in violation of the settlement agreement.

FRAUDULENT REPRESENTATIONS ABOUT CLASS TWO LOANS.

The agreement states that the liquidating agent will sell all of the WPCA's Class one and two agricultural loans to the newly chartered PCA. Plaintiffs allege that nearly all Class two loans are being returned to the liquidator, reducing the new PCA's loan volume, and making it harder for the new Western Oregon Production Credit Association (WOPCA) to survive. If, as plaintiffs imply, the receiver is not offering these Class two loans to the new WOPCA as required by the agreement this would be a violation of the agreement.

DEFENDANTS' INTENTION NEVER TO FORM A VIABLE PCA AND SECRET PLAN TO CENTRALIZE

The resolution provides that liquidation will occur subject to the following conditions:

1. That a new production credit association will be formed to serve the same

territory as WPCA, said new production credit association to offer financing and services to eligible farmers in the territory served, as provided by applicable laws and regulations.

. . . .

4. The Governor of the Federal Credit Administration will repeal FCA's recent action expanding the territory of Central Oregon Production Credit Association to include the territory which is presently served by WPCA and will be served by the new PCA.

Plaintiffs' Memorandum in Support, Stipulation and Agreement of Dismissal, Exhibit D, pp. 4–5.

Condition one clearly contemplates a viable PCA for the Willamette Valley, and condition four contemplates an honest effort by defendants to keep this new PCA viable and not to centralize it. Plaintiffs have alleged secret plans to merge and to make the new PCA fail. If these allegations are true, these plans would be a violation of the settlement agreement.

## CONCLUSION

In sum, it appears that defendants may have violated the settlement agreement by:

. (1) not properly promulgating regulations which leads to a fire-sale approach to liquidation;

(2) filing an action against the Board;

(3) violating the court's protective order;

(4) failing to provide meaningful reports to directors of the WPCA;

(5) not buying sufficient numbers of class two loans; and

(6) planning to form a centralized PCA and eliminate the new WOPCA.

For these reasons, I grant plaintiffs' motion to vacate the judgment on the basis of Fed.R.Civ.P. 60(b)(6) for the purpose of determining, through an evidentiary hearing, whether the defendants violated the settlement agreement as alleged by plaintiffs.

## APPENDIX I

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON

GEORGE VanLEEUWEN, HERBERT C. COLEMAN, WILLIAM A. KESSI, ED AMMON, and FRED KASER, Plaintiffs,

vs.

THE FARM CREDIT ADMINISTRATION; DONALD J. WILKINSON; THE FEDERAL INTERMEDIATE CREDIT BANK OF SPOKANE, WASHINGTON; LARRY K. BUTTERFIELD; TWELFTH FARM CREDIT DISTRICT; and RONALD BOKMA, Defendants.

Civil Action No. CV 83–1413 PA

May 15, 1984

Stipulation and Agreement of Dismissal

The parties, by and through their undersigned counsel, hereby stipulate and agree as follows:

WHEREAS—

1. A lawsuit is pending between the parties in the United States District Court for the District of Oregon; and

2. The parties are desirous of settling the matters in dispute and terminating the lawsuit; and

3. The Farm Credit Administration has completed a second examination of the Willamette Production Credit Association ("WPCA"); and

4. The examination procedures and documentation used in that Farm Credit Administration examination were adequate; and

5. The WPCA is in default and insolvent; and

6. Based on the results of that examination the Farm Credit Administration has the authority to declare the WPCA insolvent, place the WPCA into involuntary liquidation, and appoint a receiver; and

7. In recognition of the foregoing, the board of directors of the WPCA has requested the Governor of the Farm Credit Administration to approve the board's resolution to place the WPCA in voluntary liquidation in accord with the terms of said resolution, with the exception of Item # 2 thereof; and

8. The Farm Credit Administration will approve the charter of a new production credit association in accordance with the terms and requests stipulated in the attached memorandum of Governor Donald E. Wilkinson, dated May 4, 1984, to All Incorporators of the Western Oregon Production Credit Association;

WHEREFORE, the parties agree that the above-captioned action is dismissed with prejudice and each party will bear its own costs and attorneys' fees.

## RESOLUTION

RESOLUTION of a meeting of the Board of Directors of the Willamette Production Credit Association held on the 8th day of March, 1984;

WHEREAS, the authority of the Board of Directors of the Willamette Production Credit Association (WPCA) was removed by the Farm Credit Administration on August 10, 1983, under authority granted by Section 1140 of Farm Credit Regulations; and

WHEREAS, the Board of Directors of the WPCA was reinstated on October 26, 1983 by the order of Judge Owen M. Panner, United States District Court, District of Oregon; and

WHEREAS, since the reinstatement, the Board has worked with the Federal Intermediate Credit Bank of Spokane (FICB) and the Farm Credit Administration (FCA) to determine the financial status of the WPCA; and

WHEREAS, it now appears that due to certain factors WPCA as it currently exists cannot provide as advantageous credit services to its membership as could be provided by another alternative; and

WHEREAS, the Board, working jointly with the FICB, has explored all alternatives available to the WPCA as well as to the FICB; Now therefore,

IT IS HEREBY THE RESOLUTION of the Board of the WPCA that it is in the best interest of the shareholders of the WPCA to voluntarily liquidate the WPCA pursuant to Section 1130 of Farm Credit Regulations subject to the satisfaction of the following conditions by the FICB and the FCA:

1. That a new production credit association will be formed to serve the same territory as WPCA, said new production credit assocaition to offer financing and services to eligible farmers in the territory served; as provided by applicable laws and regulations.

2. That WPCA will not be placed in voluntary liquidation status by the FICB until the new PCA's charter has been issued by the Governor of FCA.

3. Members of WPCA who transfer their agricultural loans to the new PCA or their aquatic loans to Northwest Livestock PCA will have the proceeds from their WPCA B stock redemption credited at par value against their B stock investment requirement in the new association or Northwest Livestock PCA.

 B stock redemption credits on WPCA paid off loans will be paid to members at par value.

 Class A stock of WPCA will be retired at par value.

 All other member B stock and participation certificates will be processed at par value under WPCA's membership and general financing agreement and the laws and regulations governing WPCA in Liquidation.

4. The Governor of the Farm Credit Administration will repeal FCA's recent action expanding the territory of Central Oregon Production Credit Association to include the territory which is presently served by WPCA and will be served by the new PCA.

5. FICB will appoint a liquidating agent and WPCA will be liquidated under the

Bank's regular plan of liquidation. The liquidating agent will sell all of WPCA's Class 1 and 2 agricultural loans to the newly chartered PCA subject to its approval and will sell all of its Class 1 and 2 aquatic loans to Northwest Livestock PCA subject to its approval.

The major objectives of the liquidation plan are as follows:

a. To resolve the liquidation process on a timely basis, to maximize the return from the association's assets and minimize losses to its creditors.

b. To focus both on the collection and/or improvement, which will allow collection or reclassification, of nonperforming loans that are the most costly assets of the association.

c. To safeguard against a "fire sale" approach to liquidation but rather to encourage timely, reasonable liquidation.

To the extent deemed necessary by the liquidating agent, he may call upon the WPCA Board of Directors for advice and counsel to attain the objectives set forth above. The liquidating agent will provide the WPCA Board with the regular reports relating to the progress of the liquidation.

These aforementioned conditions are mutually dependent on one another, and without compliance with all of them this resolution shall be of no force or effect.

This resolution has been adopted by the Board of Directors of WPCA in furtherance of the best interest of its members.

/s/George Van Leeuwen
George Van Leeuwen

/s/Ed N. Ammon
Ed N. Ammon

/s/Herbert C. Coleman
Herbert C. Coleman

/s/William A. Kessi
William A. Kessi

/s/Fred Kaser
Fred Kaser

**Memorandum**

May 4, 1984

To: All Incorporators
Western Oregon Production Credit Association

From: Donald E. Wilkinson
Governor

Subject: Application for a Charter for the Western Oregon Production Credit Association

The Farm Credit Administration has analyzed the application to charter a new production credit association to serve the territory currently served by the Willamette Production Credit Association. In analyzing any application, three factors are of primary importance:

1. The association currently serving the territory of the proposed association is analyzed to determine whether the existing association is serving the territory effectively.

2. The directors of the proposed association have demonstrated sound financial management and business judgment in the operation of their own business and/or through other business affiliations.

3. The operating plan submitted by the applicants offers some prospect that the newly chartered association can be successful.

Considering those three main factors in your application, we find:

1. Several of the proposed board members have loans with the Willamette PCA that are classified less than acceptable. The adverse loan classification identifies loans that have serious credit weaknesses that require more than normal servicing. The classification evidences that the borrower is experiencing problems in his agricultural operations that reflect negatively on the borrower's practices. In addition, since the loan quality has deteriorated, the borrower's impartiality and objectivity in the decisionmaking process of the board is in question. For these reasons, no charter request can be approved that

contains proposed directors with adversely classified loans. In addition, two of the present directors of the Willamette PCA are proposed as directors of the Western Oregon PCA. The financial condition of the Willamette PCA has been in decline since 1980. The board was not successful in assuring that necessary corrective actions were made, as evidenced by the current default and insolvency of the Willamette PCA. Therefore, members of the Willamette PCA board cannot serve as directors of the Western Oregon PCA.

2. The proposed territory is currently served by the Willamette PCA. A new PCA cannot be chartered to serve this territory until the Willamette PCA is placed in liquidation through voluntary liquidation or receivership. The liquidation of the Willamette PCA is necessary in order that the new PCA be provided with sufficient loan volume (in the form of acceptable loans acquired from the Willamette PCA in receivership) to provide the new PCA with reasonable prospects for survival.

3. The operating plan proposes joint staff between the Western Oregon PCA and the Willamette PCA. While such an arrangement may be necessary for a short interim period, it must not continue beyond a certain date because the activities and responsibilities of the employees of the two entities are distinct and must be kept separate.

The Farm Credit Administration will give favorable consideration to an application to issue a charter to the Western Oregon PCA if the application is amended as follows:

1. The proposed membership of the board must be brought into conformity with the following requirements: each proposed director who is a borrower of the Willamette PCA must have a loan that is classified "Acceptable"; and no proposed director can be a member of the present Willamette PCA Board of Directors.

2. The agreement between the proposed association and the Willamette PCA to maintain some joint staff must have a termination date of no later than 6 months following the issuance of a charter for the Western Oregon PCA. After that date, no joint employees will be maintained. The charter will be issued when the WPCA is placed in liquidation.

FCA is prepared to charter the Western Oregon PCA on the bases outlined above, but the following reservations must be noted and recognized by the incorporators. The proposed association offers significant disadvantages over an earlier proposal (Central Oregon) to provide credit service to the territory currently served by the Willamette PCA. The proposed association will charge a higher interest rate. Service will not be as good due to fewer branches and the operation of the participation pool that currently accepts only acceptable loans and well-secured problem loans only after making its own independent credit decision. Finally, the association will have no initial capacity to absorb credit risks. In spite of these disadvantages, the incorporators desire a separate association serving the Willamette Valley. Therefore, if the above conditions are met, a charter will be issued for the Western Oregon PCA.

It is FCA's obligation to assure, to the extent possible, that the incorporators of the proposed association have as many facts at hand as possible to assist them in making a decision. FCA is not able to take into consideration any intangible differences inherent in dissimilar agricultural areas, so its evaluation of any alternative proposals is limited only to financial factors. FCA, however, does encourage the incorporators to actively identify and consider all factors impacting on alternatives.

The agency considered the last proposal presented by Central Oregon as an economic alternative. The analysis makes the assumption that Central Oregon's most recent proposal would still be in effect, although, no contact has been made with

Central Oregon to determine this. The Central Oregon PCA could reject or alter any proposal placed before it. With this as a basis, FCA proceeded to make an analysis of the proposal presented in 1983 by Central Oregon, updated with Central Oregon's 5 year financial projection current as of late 1983 and based on their March 31, 1984 balance sheet.

The current FCA analysis of the Central Oregon proposal, if now implemented, shows net savings to the borrower over the new charter proposal of 0.4 percent in interest costs. In its original proposal, Central Oregon would have accepted Willamette PCA's class 1 and 2 loans with a provision that Central Oregon would have up to 120 days to inspect the Willamette PCA loans and reject those not meeting Central Oregon's credit standards. Central Oregon proposed an interest spread of 1.00 percent over the lending rate to its own borrowers. Using Central Oregon's current spread to its own borrowers of 0.6 percent would mean a spread of 1.6 percent to the Willamette members. This is compared with the new Western Oregon PCA, which proposes a 2 percent spread. Additionally, if arrangements were made with Central Oregon for its purchase of the loans on the same basis as is contained in the Western Oregon proposal, i.e., that the loans would be participated in the pool loan program on a 90 percent basis, the interest rate that the Willamette area borrowers would pay would still be 0.4 percent below the interest rate proposed to be charged by the Western Oregon PCA.

The FCA projection of the Western Oregon PCA indicates that the proposed PCA will generate only $81,000 in risk funds by the end of 1984 and $564,000 by the end of 1988. (This projection assumes no loan losses for 5 years.)

The Central Oregon proposal would have resulted in over $6 million in risk funds at the end of 1984 and approximately $9.5 million at the end of 1988. This would be a financially strong PCA.

FCA's study on the viability of the proposed Western Oregon PCA indicates it has a chance of success if the assumptions on growth and loan losses are correct. However, it is estimated that it will take longer than 5 years before the proposed PCA can consider reducing its dependency on the district pool and begin normal lending operations.

If the new association is chartered, borrowers from the Willamette PCA whose loans are classified "Acceptable" or any other borrower accepted by Western Oregon PCA may voluntarily become members of the new association. This action must be evidenced by each borrower's executing a membership agreement with the Western Oregon PCA. This agreement must provide the borrower with an explanation of his/her rights and liabilities as a borrower/stockholder of the Western Oregon PCA. Prior to becoming stockholders and executing a membership agreement, all prospective stockholders shall be given a pro forma financial statement of the Western Oregon PCA.

This statement can be prepared on the assumption that all Willamette PCA loans classified "Acceptable" will be transferred to the new production credit association. The statement will be footnoted in explain the assumptions used in its preparation. Thereafter, borrowers shall be provided financial statements of the association at least semiannually.

**Farm Credit Administration**

May 4, 1984

Mr. George Van Leeuwen, Chairman

Board of Directors

Willamette Production Credit Association

P.O. Box 590

Salem, OR 97308

Dear Mr. Leeuwen:

The November 25, 1983 credit examination of the Willamette Production Credit Association has been completed. The results of this examination are summarized in the enclosed report.

▮▮▮▮▮

After the adjustments reflecting the results of the examination are made to the association's financial statements, the following significant facts are evident:

1. The association's capital stock is impaired.

2. The association is in default on its loan from the Federal intermediate credit bank and is insolvent.

3. If the association resumes its program of retiring capital stock and participation certificates in excess of the amount needed to capitalize a borrower's loan, the association's debt-to-capital ratio will exceed the 10 to 1 limit permitted by law.

In recognition of these facts, the board has requested that the Governor of the Farm Credit Administration approve the board's resolution to place the association in voluntary liquidation.

As you are aware, the lawsuit, *Van Leeuwen, et al., v. Farm Credit Administration et al.,* is pending in United States District Court, District of Oregon. Currently, the Farm Credit Administration is under a restraining order that prevents the Agency from approving the request to place the association in voluntary liquidation. The court has scheduled a trial date of May 16, 1984. FCA intends to file a motion for a summary judgment by May 18, 1984, and will request that the trial date be delayed pending a decision on that motion.

The lawsuit can only be terminated by a dismissal or by the court's entering a judgment. FCA is prepared to move to a judgment but will agree to a dismissal of the action with prejudice against the plaintiffs. In connection with the dismissal, FCA will approve the action of the board to place the Willamette PCA in voluntary liquidation.

Sincerely,

/s/Donald E. Wilkinson
Donald E. Wilkinson
Governor

Enclosure

APPENDIX II

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON

GEORGE VanLEEUWEN, HERBERT C. COLEMAN, WILLIAM A. KESSI, ED AMMON, and FRED KASER, Plaintiffs,

vs.

THE FARM CREDIT ADMINISTRATION; DONALD J. WILKINSON; THE FEDERAL INTERMEDIATE CREDIT BANK OF SPOKANE, WASHINGTON; LARRY K. BUTTERFIELD; TWELFTH FARM CREDIT DISTRICT; and RONALD BOKMA, Defendants.

Civil No. 83–1413–PA

May 15, 1984

ORDER

Based upon the stipulation of the parties filed herewith, this action is dismissed with prejudice and each party will bear its own costs and attorneys' fees.

DATED this 15th day of May, 1984.

/s/Owen M. Panner
Owen M. Panner
United States District Judge

Presented by:

/s/Jack G. Collins
Jack G. Collins, Asst. U.S. Attorney
Attorney for United States