**Mark V. SHOEN, Plaintiff,**

v.

**Leonard Samuel SHOEN and Carol Shoen, husband and wife; Michael L. Shoen and Christa G. Shoen, husband and wife, Defendants.**

**Edward J. SHOEN, Plaintiff,**

v.

**Leonard Samuel SHOEN, et ux., et al., Defendants.**

Nos. CIV 90–1561 PHX BMV,
CIV 91–2024 PHX BMV.

United States District Court,
D. Arizona.

July 16, 1996.

Russell Piccoli, Phoenix, AZ, for Edward J. Shoen.

Richard M. Amoroso, Phoenix, AZ, for Mark V. Shoen.

Michael L. Shoen, Paradise Valley, AZ, for Michael and Christa Shoen.

Michael J. O'Grady and Paul McGoldrick, Scottsdale, AZ, for Leonard and Carol Shoen.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

On April 27, 1995, this court delivered a Memorandum and Order denying the plaintiffs' request to contact the jurors who deliberated in this case as to their understanding of the verdict forms provided by this court.[1] Since that time, the plaintiffs have made repeated attempts to convince this court to reverse its decision. On May 16, 1996, the Ninth Circuit Court of Appeals granted the plaintiffs' motion for a remand "for the limited purpose of permitting the district court to consider the proposed Federal Rule of Civil Procedure 60(b) motion." *United States Court of Appeals' Order of May 16, 1996,* 1. This court denies the plaintiff's motion for relief pursuant to Fed.R.Civ.P. 60(b)(2) and 60(b)(6). The plaintiffs have not demonstrated adequate reason for this court to allow the jurors to be contacted regarding their alleged confusion about the verdict forms.

## I. BACKGROUND

On April 4, 1995, the jurors received six verdict forms by which their deliberations were to be guided. The subject matter of the verdict forms was as follows:

I. Alleged defamation of Edward Shoen by Leonard Shoen

II. Alleged defamation of Mark Shoen by Leonard Shoen

III. Alleged defamation of Mark Shoen by Michael Shoen

IV. Alleged defamation of Edward Shoen by Michael Shoen

V. Dismissal of defamation action against Michael Shoen

VI. Dismissal of defamation action against Leonard Shoen

Verdict forms I through IV were identical. The jurors were asked three questions as to defamation: (1) if, by a preponderance of the evidence, a defendant published a defamatory statement against a plaintiff; (2) if, by a preponderance of the evidence, this statement was false and, (3) if, by clear and convincing evidence, the defendant knew the statements were false or made with reckless disregard to the truth. All three questions required the jury to "unanimously find" each of these elements. On each verdict form, the jurors were also asked if the two defendants formed a conspiracy to defame the plaintiffs. Finally, the jurors were requested to determine a dollar amount of the damages suffered by a particular plaintiff.

The court received a series of communications during the jury's deliberations. The notes discussed the following matters:

I. Definition of preponderance of the evidence

---

**1.** This memorandum and order was filed on May 1, 1995. However, as all litigants refer to this order as the Order of April 27, 1995, the court will use that designation to avoid confusion.

II. Difference between the preponderance of the evidence and the clear and convincing evidence standard; court requested clarification

III. Request from juror Donald Ebert to be dismissed from jury which was granted by this court

IV. Agreement by jury of court's interpretation of jury's request in note II; further questions as to whether state of mind enters into defamation and consequences of finding defamation without the element of malice existed

V. Recommendation from court to jury that deliberations recess by 5:00 p.m., April 5, 1995. Jury requested to stay past 5:00 p.m. Court agreed to attend to jury until receiving further notice from jury.

VI. The note from the jury read as follows:

"You have given us a form for dismissal of L.S. Shoen—In marking the yes for defamation only, is this grounds for dismissal of L.S. So we sign the dismissal form, too?"

VII. Note from jury: "We have reached a unanimous verdict."

Communication VI was not answered by the court because the jury announced the verdict before counsel for all litigants could be assembled to discuss a proposed answer.

Verdict forms I and II were delivered to the court completed. The jury marked "yes" to the question of whether Leonard Shoen had defamed Edward and Mark Shoen, respectively. The jury, however, marked "no" as to the falsity of the statements and as to whether they were made with malicious intent. The jurors found that the plaintiffs were entitled to no damages and that no conspiracy was present.

Verdict forms III and IV were initially returned to the court unmarked. They were returned to the jury and subsequently filled out. The jury answered "no" to all questions regarding the alleged defamation by Michael Shoen. The jury also found no conspiracy and entered $0 on the line for damages. Furthermore, the foreperson signed verdict form V which stated that the jury "unanimously f[ou]nd in favor of the Defendant, Michael L. Shoen, and for dismissal of the action against him."

As to verdict form VI, the jury returned the form to the court unmarked three times. Finally, in open court and on the record, the court determined that the answers to the special questions in verdict forms I and II established that Leonard Shoen was entitled to a judgment of dismissal. The court directed the foreperson to sign verdict form VI.

## II. THE PLAINTIFFS' RULE 60(b) MOTION

The plaintiffs request that this court reconsider its April 27, 1995 decision to deny the plaintiffs the opportunity to examine the jurors by written interrogatories to ascertain if they reached a unanimous verdict in this case. Under Federal Rule of Civil Procedure 60(b)(2), the court may relieve a party from a final judgment or order if the plaintiff brings forward "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial." The court may also grant relief for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6).

The plaintiffs base their motion on a chance meeting at a Phoenix-area restaurant between Richard Amoroso, the trial counsel for Mark Shoen, and Donald Ebert, the original jury foreman who had been dismissed from the case due to personal reasons while the jury was deliberating. Ebert approached Amoroso and apologized for having to leave the trial before the completion of deliberations. Ebert, without prompting from Amoroso, reported that he received telephone calls from two jurors the night of the verdict. Ebert claimed that both jurors told him that the jury "had really screwed up."

Amoroso correctly did not begin to question Ebert on the context of how the jury "screwed up" due to United States District Court for the District of Arizona Rule 1.11(b) ("Local Rule 1.11(b)"). Local Rule 1.11(b) states that

"[i]nterviews with jurors after trial by or on behalf of parties involved in the trial are prohibited except on condition that the attorney or party involved desiring such an

interview file with the Court written interrogatories proposed to be submitted to the juror(s), together with an affidavit setting forth the reasons for such proposed interrogatories, within the time granted for a motion for a new trial. Approval for the interview of jurors in accordance with the interrogatories and affidavit so filed will be granted only upon the showing of good cause. See Federal Rules of Evidence, Rule 606(b)." [2]

The plaintiffs believe that this new information, combined with other discrepancies they allege to exist in regard to the verdict forms and jury deliberations, should lead this court to allow the plaintiffs to contact the jurors as to their understanding of the verdict delivery. The plaintiffs' other concerns regarding the verdict include (1) the fact that the jury did not originally sign verdict form VI dismissing the defamation claim against Leonard Shoen; (2) that the court did not answer the jury communication VI because the jury had reached a unanimous verdict in jury note VII; and, (3) that verdict forms I through IV were ambiguous as to whether the jury unanimously decided in the negative to questions (2) and (3) regarding falsity and malice so that the jury should have continued deliberations.

### III. APPLICATION OF RULE 60(b)

This court notes at the outset that this is not the time to discuss every issue remotely connected to the verdict forms and jury deliberations. The Ninth Circuit has provided this court with a *limited* remand to review the plaintiff's motion under Fed.R.Civ.P. 60(b)(2) and (6). Therefore, it is attorney Amoroso's conversation with released juror Ebert which is the focus of this order. The concentration of the court's decision must center on whether the information from juror Ebert requires this court to reverse its position and allow counsel for the plaintiffs to contact the jury.

Plaintiffs, citing *In re Roxford Foods, Inc.*, 12 F.3d 875, 879 (9th Cir.1993), contend that relief under Rule 60(b) must be "liberally applied" because of its remedial nature. The plaintiffs, however, do not take account of the specific fact situation of *Roxford Foods*. That case dealt with a default judgment and the "liberally applied" language is only referring to cases where a litigant is being denied the chance to argue the case on the merits. *See id.* Further evidence that the liberal application of Rule 60(b) primarily applies to the *Roxford Foods* situation exists in that the Ninth Circuit has determined that Rule 60(b)(6), which is the catch-all provision of the rule that allows relief for a reason not specified in Rule 60(b)(1) through (5), should only be applied in "extraordinary circumstances". *United States v. Sparks*, 685 F.2d 1128, 1130 (9th Cir.1982); *see also In re Roxford Foods*, 12 F.3d at 881 (demonstrating connection between liberal application of Rule 60(b) and a situation where a default judgment has denied a litigant the opportunity to argue a case on the merits); *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (same). While liberal application of the Federal Rules of Civil Procedure is recommended to "effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems", *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir.1983), the plaintiffs do not dispute that this case was fairly tried on the merits and that there were no general problems of procedure. In addition, the Courts of Appeal that have made statements specific to Rule 60(b)(2) view these motions with disfavor. *See, e.g., Callanan v. Runyun*, 75 F.3d 1293, 1296–97 (8th Cir.1996); *Mitchell v. Shalala*, 48 F.3d 1039, 1041 (8th Cir.1995); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 728 (10th Cir.1993); *Bohus v. Beloff*, 950 F.2d 919, 930 (3rd Cir.1991).

---

2. If the court were to strictly follow Local Rule 1.11(b)'s limitation that a party must file a written interrogatory and affidavit within "the time granted for a motion for a new trial", the plaintiffs would be time barred from filing the present Federal Rule of Civil Procedure 60(b)(2) motion. A motion for new trial shall be filed no later than 10 days after the entry of judgment. Fed. R.Civ.P. 59(b). However, Fed.R.Civ.P. 60(b) allows motions under that subsection to be filed within one year after the order was entered. As the plaintiffs timely filed their Rule 60(b)(2) motion, this court declines to follow Local Rule 1.11(b)'s time constraints and will review this motion on the merits.

In addition, this court must view the use of Rule 60(b) in the context of the plaintiffs' attempt to communicate with the jury. The public policy of allowing jurors to complete their service without concern for future consequences is demonstrated by District of Arizona Local Rule 1.11(b). Attorneys cannot contact jurors without court approval and the court cannot grant approval of juror interviews unless it has good cause. The rationale for the Local Rule stems from Federal Rule of Evidence 606(b), which states that

> "A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, ..."

The Sixth Circuit has explained this Federal Rule of Evidence is important because it

> "ensures that jurors will not feel constrained in their deliberations for fear of later scrutiny by others. Further, it guarantees that jurors cannot manipulate the system when their views are in the minority by repudiating an earlier verdict and obtaining a mistrial. It thus advances important policy considerations." *In re Beverly Hills Fire Litigation,* 695 F.2d 207, 213 (6th Cir.1982), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983).

Furthermore, the Ninth Circuit has held that Rule 606(b) restricts juror testimony to only "facts bearing on extraneous influences on the deliberation, in the sense of overt acts of jury tampering." *United States v. Pimentel,* 654 F.2d 538, 542 (9th Cir.1981); *see Hard v. Burlington Northern R.R. Co.,* 870 F.2d 1454, 1461 (9th Cir.1989). Jurors may not impeach their own verdict. *United States v. Weiner,* 578 F.2d 757, 764 (9th Cir.), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978).

## IV. DISCUSSION

It is in the frame of mind outlined in section III of this Memorandum and Order that this court must deny the plaintiffs' motion. In order to succeed on a Rule 60(b)(2) motion, the movant must show that the new evidence "(1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones v. Aero/Chem Corp.,* 921 F.2d 875, 878 (9th Cir.1990); *see Pacific Group v. First State Ins. Co.,* 841 F.Supp. 922, 933 (N.D.Cal. 1993) (new evidence "must be of such a character that it would change the outcome of the Court's prior decision"), *rev'd on other grounds,* 62 F.3d 1425 (9th Cir.), *opinion modified and redesignated as opinion,* 70 F.3d 524 (9th Cir.1995); *Wilson v. Upjohn Co.,* 808 F.Supp. 1321, 1323 (S.D.Ohio 1992) ("The moving party has an extremely difficult burden to overcome before the Court can grant relief under Rule 60(b)(2)").

While the plaintiffs succeed on the second prong on the test, since Local Rule 1.11(b) prevented their counsel from discussing the case with the jury absent court approval, they fail under the first and third criteria. The conversation between Ebert and the two jurors who remained for the entire deliberations took place after the verdict was delivered. Therefore, the evidence could not have existed at the time of trial.

The plaintiffs also do not satisfy the third prong of the *Jones* test because this information would not change the disposition of the case. First, the "screwed up" information from juror Ebert is ambiguous. It is second-hand information. Second, the jury was polled during the delivery of the verdict and all answered affirmatively to the question of whether it was indeed their opinion that neither Leonard Shoen nor Michael Shoen defamed the plaintiffs. The jury filled out "$0" for damages for Leonard Shoen which demonstrates that they were in accordance with a dismissal of the defamation charge against him. Since damages is an essential element of a tort such as defamation, the plaintiffs could not have succeeded on their tort claim. Third, it would be entirely consistent for the jury to have marked yes for question one on verdict form I and II but no to questions two and three. Before this case was assigned to this court, and with the subsequent concurrence of this court, it

had been determined that the plaintiffs were to be considered "limited public figures." 50 *Am.Jur.2d* Libel and Slander §§ 74, 75. Thus, even if the defendants did defame the plaintiffs, the plaintiffs had to prove the tort was performed with falsity and malice. The plaintiffs were unsuccessful in this attempt. Fourth, the jury did not feel that their alleged mistake compelled them to contact this court with their concern nor do these facts involve the liberty interest of allowing a defendant to be imprisoned when a jury did not unanimously intend to convict. *See United States v. Dotson*, 817 F.2d 1127 (5th Cir.), *modified on other grounds*, 821 F.2d 1034 (5th Cir.1987). Fifth, this is not a case where the jury verdicts are inconsistent on their faces, thus requiring this court to grant relief from the judgment. *See Hopkins v. Coen*, 431 F.2d 1055, 1059 (6th Cir.1970). Sixth, even if the answers to the interrogatories were seemingly inconsistent, the Ninth Circuit has held that the trial court has a duty to reconcile those findings and can only remand for a new trial "in the case of fatal inconsistency." *Floyd v. Laws*, 929 F.2d 1390, 1396 (9th Cir.1991) (citing *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963)); *see also United States v. Real Property Located at 20832 Big Rock Drive, Malibu, Cal. 90265*, 51 F.3d 1402, 1408 (9th Cir.1995) (trial court has broad discretion in determining the form, content, and layout of the verdict form). Finally, this is also not a situation where the jury's failure to fill out verdict form VI resulted in "a gaping hole in the special verdict." *Union Pacific R.R. Co. v. Bridal Veil Lumber Co.*, 219 F.2d 825, 831 (9th Cir.1955), *cert. denied*, 350 U.S. 981, 76 S.Ct. 466, 100 L.Ed. 849 (1956). The decision of this court to direct the jury foreperson to sign verdict form VI, thus dismissing the defamation claim against Leonard Shoen, was entirely consistent with the jury's answers to the interrogatories on verdict forms I and II and its finding that Michael Shoen had not defamed the plaintiffs. *See Atlantic and Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.").

For these same reasons, this court must reject the plaintiffs' request for relief under Rule 60(b)(6). First, a number of courts have held that a movant may only use Rule 60(b)(6) for a claim for relief that does not fit into the five specific categories of Rule 60(b)(1) through (5). *See, e.g., Met–Al, Inc. v. Hansen Storage Co.*, 844 F.Supp. 485, 487 (E.D.Wis.1994); *VanLeeuwen v. Farm Credit Admin.*, 600 F.Supp. 1161, 1164 (D.Or. 1984); *see* Fed.R.Civ.P. 60(b) (subsection (6) is separated by an "or" from subsections (1) through (5)). Thus, by claiming that they were entitled to relief under Rule 60(b)(2), the plaintiffs are prevented from pursuing a Rule 60(b)(6) line of attack. Second, there must be extraordinary circumstances surrounding this case for the court to grant Rule 60(b)(6) relief and this court has determined that they do not exist. *Sparks*, 685 F.2d at 1130; *VanLeeuwen*, 600 F.Supp. at 1164; *Heirs-at-Law and Beneficiaries of Gilbert v. Dresser Indus., Inc.*, 158 F.R.D. 89, 93 (N.D.Miss.1993).

## V. CONCLUSION

The plaintiffs' motion for relief under 60(b)(2) and 60(b)(6) is denied. They have not adequately shown that the information from juror Ebert would have changed the verdict in light of the substantial burden which the plaintiffs must overcome, nor have they demonstrated sufficient reason for this court to interfere with the public policy against post-trial communication with jurors.

**MOTION DENIED.**