Joanna R. ARNOLD,
Plaintiff-Appellant,

v.

UNITED STATES of America, United
States Postal Service and Orvene
Carpenter, Defendants-Appellees.

No. 85–5993.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 2, 1986.

Decided May 5, 1987.

Janet M. Koehn and Douglas Stenzel, Ventura, Cal., for plaintiff-appellant.

Gerald J. Robinson, Washington, D.C., Stephen E. O'Neill, Los Angeles, Cal., for defendants-appellees.

Before HUG, FLETCHER and BOOCHEVER, Circuit Judges.

FLETCHER, Circuit Judge:

The district court dismissed Joanna Arnold's claims of sex discrimination and harassment against Postmaster Orvene Carpenter, the United States of America, and the United States Postal Service (USPS) on three grounds: (1) a USPS decision reinstating Arnold with backpay, benefits, and seniority mooted her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982); (2) the court lacked subject matter jurisdiction to hear claims against the United States and the USPS because the Federal Tort Claims Act, 28 U.S.C. § 2680(h), explicitly excludes intentional torts; and (3) Postmaster Carpenter is absolutely immune from liability because the acts Arnold alleges he performed were acts within the perimeter of his duty.

Arnold challenges the first and third grounds. She contends that the USPS decision did not compensate her for harms suffered prior to September 4, 1982, the effective date of her reinstatement. She also contends that her complaint states a *Bivens* cause of action against Carpenter and that Carpenter is not entitled to absolute immunity from her state-law tort claims. Defendants-appellees raise for the first time on appeal that this court lacks subject matter jurisdiction because Arnold failed to file her complaint in district court in a timely fashion.

We affirm in part and reverse in part.

## FACTS

On April 7, 1981, Joanna Arnold was hired by the United States Postal Service (USPS) as a machine distribution clerk in the Oxnard, California, post office. During the summer of 1981, Arnold passed an examination for mailhandlers. She met with Postmaster Orvene Carpenter, in his office, on September 23, 1981, to request a transfer.

Arnold alleges that Carpenter told her that the position of mailhandler was a "man's" job and that he would not put any woman, especially Arnold, into the position. She further alleges that he then placed his chair directly in front of her and fondled her knees. When Arnold attempted to leave, Carpenter blocked the door preventing her from leaving. Carpenter then held Arnold close to his body, kissing and fondling her. Arnold states that Carpenter continued to make sexual advances and harass her after the September 23, 1981, incident. Carpenter denies the allegations.

On October 8, 1981, Arnold was told she was to be removed effective November 10, 1981. She submitted her resignation on October 16, 1981. On October 21, 1981, the Oxnard Post Office hired a new mailhandler, who was male.

On October 22, 1981, Arnold sought counseling from the district Equal Employment Opportunity (EEO) Specialist for harassment by the Postmaster. On November 12, 1981, she again sought counseling for discrimination based on the refusal to transfer her, and she asked at that time to withdraw her resignation. The complaints were informally resolved on December 10, 1981. Arnold agreed to withdraw the charges in exchange for which she would have "first consideration" for a mailhandler position at the Oxnard Post Office

when the next position became available. Arnold returned to work and was promoted within her clerk position five days later.

Arnold alleges that Carpenter continued to harass her after the December 10, 1981, settlement. On January 21, 1982, Arnold was notified she would be removed on February 20, 1982, and was so removed, because she failed to learn a particular scheme assignment. However, an Equal Employment Opportunity Commission Report (the Tilman Report) found that "the agency could articulate no legitimate business reason" for requiring Arnold to learn the scheme.

In August 1982 a male was appointed to a position as mailhandler, effective September 4, 1982. Arnold contends that she was not given first consideration as was required by the settlement agreement.

Arnold filed a formal complaint and request for investigation with the EEO officer on September 7, 1982. The complaint included charges of sex discrimination and harassment from September 23, 1981, the date of the first office meeting with the Postmaster, through February 1982 when she was terminated from her job. She also alleged that she was passed over in August 1982 for the position of mailhandler in reprisal for her earlier complaints. The USPS rejected Arnold's claim because she failed to formalize it within fifteen days of receiving her Notice of Final Interview pursuant to 29 C.F.R. § 1613.214(a)(1)(ii)(1986). Arnold appealed to the Office of Review and Appeals of the EEOC, which issued its opinion on September 19, 1983 (the Rozzi Decision).

The Rozzi Decision consists of two seemingly inconsistent prongs. First, the decision concluded that Arnold failed to show why the USPS's stated reason for its refusal to select her as mailhandler was pretextual. Because the agency acted in good faith in denying Arnold the position, it did not breach the settlement and, because of the settlement, Arnold could not pursue her original claims of sex discrimination and harassment. Nonetheless, the Rozzi Decision remanded to the USPS the issue of whether the USPS acted in reprisal for Arnold's complaints in denying her the mailhandler position.[1] How the USPS could act both in good faith and in reprisal is unclear. The Rozzi Decision did not address the fifteen-day requirement, which had been the basis for the USPS's denial of Arnold's claim.[2]

Arnold appealed the Rozzi Decision to the United States District Court on November 7, 1983. Her complaint alleges sexual harassment and common law torts based on the September 23, 1981, incident with Postmaster Carpenter and wrongful discharge in February 1982 in retaliation for her prior complaints.

Simultaneously, Arnold pursued her administrative claim of retaliation based on the USPS's refusal to hire her as a mailhandler on September 4, 1982. In her October 17, 1984 report, the Attorney-Examiner concluded that the USPS's refusal to hire Arnold as a mailhandler on September 4, 1982, was in reprisal for Arnold's previous complaints (Tilman Report). The Tilman Report recommended that Arnold be instated to the position of mailhandler as of September 4, 1982, and awarded retroactive backpay, seniority and other benefits to which she would have been entitled from that date forward. The USPS accepted the Tilman Report's recommendation as its final agency decision. Neither party has appealed the USPS's action based on Arnold's retaliation claim.

---

**1.** "Appellant has not shown that the agency's reason for her nonselection was pretextual. Accordingly, we find that the appellant does not have a right to pursue her original claim since the settlement agreement was carried out by the agency. . . .

Appellant also alleged reprisal in her complaint. That claim was not disposed of by the agency. That issue is remanded, therefore, to the agency for further processing."

**2.** The USPS has not pursued an argument based on the fifteen-day requirement, and accordingly has waived it. *See Boyd v. United States Postal Serv.*, 752 F.2d 410, 414 (9th Cir.1985) (requirement of 29 C.F.R. § 1613.214(a)(1)(i) that federal employees present grievance within 30 days of personnel action subject to waiver, estoppel and equitable tolling).

## DISCUSSION

### I.   Title VII

#### A.   Mootness

■ The district court held that the agency action rendered Arnold's appeal of the Rozzi Decision moot. A claim is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 1481 (1982) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969))). The burden to demonstrate mootness is heavy. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). We review a district court's determination of mootness de novo. *Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986).

The district court found that Arnold could not benefit from a favorable outcome to the lawsuit because the USPS's action in instating Arnold compensated her for its prior retaliatory refusal to hire her as a mailhandler. The court, however, overlooked the fact that Arnold's claims commence with acts dating from September 23, 1981, while the USPS's award compensates Arnold only from September 4, 1982, forward. The district court's order ignores possible recompense for the allegedly discriminatory practices during these twelve months.

The incidents from September 23, 1981, until September 4, 1982, fall into two categories: first, the incidents giving rise to Arnold's November 1981 complaints, which were withdrawn following the settlement of December 10, 1981, and, second, Arnold's removal on February 20, 1982.

1.   With regard to the first category, the district court suggested during a hearing, and the USPS has argued to this court, that by withdrawing her claims in December 1981, Arnold waived her right to pursue them. Normally if a party enters into a settlement agreement knowingly and voluntarily, the agreement is treated as a binding contract and the party is precluded from raising the underlying claims. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1021 n. 15, 39 L.Ed.2d 147 (1974); *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1352 (11th Cir.1983). However, if one party breaches a settlement, the other has the option of enforcing the terms of the settlement or rescinding the settlement and suing on the original claims. *Village of Kaktovik v. Watt*, 689 F.2d 222, 230–31 (D.C.Cir.1982). Our court has assumed, for example, that the government could reinstate its case against a defendant if the defendant breached a settlement agreement. *See United States v. Sparks*, 685 F.2d 1128 (9th Cir.1982)[3]; *see also VanLeeuwen v. Farm Credit Admin.*, 600 F.Supp. 1161, 1164 (D.Ore.1984).

Arnold claims that the USPS breached the settlement by refusing her first consideration as mailhandler. The district court did not reach the issue of breach, and the Rozzi Decision is inconsistent. If, as the decision's first prong concluded, the USPS acted in good faith and did not breach the settlement, those of Arnold's claims covered by the settlement would be barred. If, on the other hand, the USPS retaliated against Arnold in denying her the position, as the Tilman Report found, the USPS was

---

**3.** The government sued Sparks for conversion. After the parties reached an oral agreement and as they attempted to work out the details, the district court dismissed the action for lack of prosecution. Over one year later, Sparks's attorney repudiated the agreement. The government moved under Fed.R.Civ.P. 60(b) for the district court to vacate the dismissal. The district court denied the motion based on the bar of a one-year statute of limitations. We reversed and remanded, stating that the statute did not apply, and directing the district court to determine whether the "extraordinary circumstances" requirement for vacating a judgment under Rule 60(b) applied. We assumed that if the district court vacated its dismissal, the government could proceed on the merits as if the settlement had never been reached. In contrast, the court noted a split in the circuits concerning whether a court can enforce a repudiated settlement agreement. 685 F.2d at 1131 n. 3.

in breach and Arnold is not bound by the settlement.

The USPS argues that even if it breached the settlement, the final agency decision adopting the Tilman recommendations constitutes enforcement of the settlement and thus precludes Arnold's prosecution of her underlying claims. We disagree. Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3, employees enjoy a right to freedom from retaliation for prior EEOC complaints. Thus, the USPS was bound by Title VII to afford Arnold consideration for the September 1982 position unimpaired by retaliation. Under the settlement, the USPS agreed to afford Arnold "first consideration" of her application to the position of mailhandler. By subjecting Arnold to allegedly inadequate consideration for the position, the USPS breached both Arnold's settlement rights and her statutory rights.

Although internally inconsistent, the Rozzi Decision disposed of the settlement issue and remanded for consideration only Arnold's statutory claim of retaliation. Upon remand of the statutory claim, EEOC Attorney-Examiner Tilman found Arnold's retaliation claim meritorious and recommended steps to remedy the retaliation. Because the agency action, adopting the Tilman recommendations, left untouched the allegedly breached settlement agreement, Arnold has legitimately chosen to appeal the portion of the Rozzi Decision denying that the settlement was breached, to request rescission of the settlement agreement, and to enforce her original claims.

The district court's finding that Arnold's claims were moot is reversed. We remand to the district court the issue of whether the USPS breached the settlement agreement. If it finds a breach, it is directed to proceed with the merits of Arnold's Title VII claim arising from the September 23 incident.

■ *2.* Arnold seeks recompense also for the February 20, 1982, discharge. However, it does not appear from the record that she fully and timely raised this claim with an EEO counselor and with the USPS within thirty days as required by 29 C.F.R. §§ 1613.214–.215. We find this claim barred[4] unless, on remand, Arnold is found to be entitled to equitable tolling of the time period. *See Boyd v. United States Postal Serv.,* 752 F.2d 410, 414 (9th Cir.1985).

### B. Thirty-day limit

■ Appellees also urge that Arnold did not timely file her complaint in federal district court and that therefore her claim is barred. Under 42 U.S.C. § 2000e–16(c), plaintiffs must file their complaint within thirty days of receiving a final agency or EEOC decision. Fed.R.Civ.P. 6(a) states that in computing a time period, if the last day of the period falls on a Saturday, Sunday, or legal holiday, the period is extended to the next business day. Arnold filed her complaint the thirty-second day after receiving the Rozzi Decision. However, because the thirtieth day fell on a Saturday, filing on Monday, the thirty-second day, was timely.

### II. Constitutional Violations

■ Arnold contends that Carpenter violated her constitutional rights in sexually harassing, assaulting, and touching her, and that she is entitled to relief under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619

---

4. Arnold would have us conclude that her September 1982 charge, which alleged discrimination arising out of the September 23 incident, implicitly included her February discharge. Under her analysis, had she not been wrongfully denied a transfer in September she would not have been in her clerk's position from which she was fired in February. We find Arnold's analysis flawed. If Carpenter's refusal to transfer Arnold was discriminatory, she may pursue her claim based on the September 23, 1981, incident, and may receive compensation extending back to that date. The February discharge would be irrelevant to that claim. If, however, Carpenter's acts were motivated by legitimate reasons, Arnold is in no different position from other complainants who have failed to file their administrative claims. Accordingly, we find that unless Arnold establishes that she is entitled to equitable tolling of the statute, she may not pursue her Title VII remedies for her February discharge.

(1971). We review the question of whether Arnold has alleged constitutional violations entitling her to relief de novo. *See Otto v. Heckler,* 781 F.2d 754, 756–57 (9th Cir. 1986). Because we find that Arnold's claims do not rise to the level of constitutional violations, we affirm the district court's ruling that Arnold's claims against Carpenter are state-law tort claims, not constitutional torts.

The government argues that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982) ("Title VII") is the exclusive remedy for employment discrimination. *Brown v. General Services Administration,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976); *White v. General Services Administration,* 652 F.2d 913 (9th Cir.1981); *cf. Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (*Bivens* action unavailable where Congress established comprehensive remedial scheme for violations by federal supervisors of their employees' first amendment rights). However, the government's analysis is incomplete. Remedy for unconstitutional actions other than employment discrimination, even if arising from the same core of facts, is not barred by Title VII. *See Otto,* 781 F.2d at 756–57.

Arnold's claim fails, however, because she has not alleged facts rising to a constitutional violation. Arnold makes only vague assertions of constitutional infringements. Her allegations of assaultive behavior and harassment are claims sounding instead in tort. *See id.* at 757–78 (defaming, following, telephoning and placing plaintiff in fear of sexual abuse are claims in tort). To the extent that Arnold's constitutional claims concern alleged discriminatory behavior by Carpenter during the September 23, 1981, meeting, Title VII provides a comprehensive remedial scheme.

*See Nolan v. Cleland,* 686 F.2d 806, 814–15 (9th Cir.1982) (due process claim for involuntary resignation precluded because "the factual predicate for Nolan's due process claim is the discrimination which is the basis of her Title VII claim."); *see generally, Otto,* 781 F.2d at 756–57. Arnold therefore has no *Bivens* claim.

### III. State-Law Tort Claims

#### A. Immunity

■ The district court erred in dismissing Arnold's tort claims against Carpenter on the ground that Carpenter was entitled to absolute immunity. Federal officials are entitled to absolute immunity from state claims when their actions are discretionary, *Williams v. Collins,* 728 F.2d 721, 727 (5th Cir.1984), and do not extend beyond "the outer perimeter of [their] line of duty." *Barr v. Matteo,* 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959). The Supreme Court, however, has underscored the limit of the *Barr* immunity; *Barr* did not "purport[ ] to abolish the liability of federal officers for actions manifestly beyond their line of duty." *Butz v. Economou,* 438 U.S. 478, 495, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978).[5]

The government argues that because Carpenter's actions occurred during a discussion Arnold initiated to request a transfer, Carpenter was acting within the scope of his authority. But officials acting within "the specific context of the employment situation," *McKinney v. Whitfield,* 736 F.2d 766, 770 (D.C.Cir.1984), exceed the outer perimeter of their authority if they employ excessive means. *Otto,* 781 F.2d at 758; *see also Krohn v. United States,* 742 F.2d 24, 30 (1st Cir.1984); *McKinney,* 736 F.2d at 770–71. Accordingly, we must determine whether Carpenter's actions, as al-

---

**5.** Arnold argues that this court should overrule its prior rulings, *see, e.g., Otto v. Heckler,* 781 F.2d 754 (9th Cir.1986); *Miller v. DeLaune,* 602 F.2d 198 (9th Cir.1979), which have accorded federal employees absolute immunity from tort actions when they are acting within the scope of their authority. She points out that the trend has been toward recognizing a defense of qualified rather than absolute immunity and suggests that no legitimate reason mandates treating claims of constitutional violations, when officials are entitled to only qualified immunity, differently from state claims. Because we find

leged by Arnold,[6] constituted means beyond his authority.

Arnold alleges that Carpenter committed assault, false imprisonment, intentional infliction of emotional distress, and battery. In *Otto*, 781 F.2d at 758, we held that a federal employee could assert a variety of common law claims against her supervisor who she claimed followed, defamed, and harassed her with telephone calls. Similarly, Carpenter allegedly created an atmosphere of sexual harassment in touching Arnold and refusing to permit her to leave his office during the September 23 incident, and in his sexual advances thereafter. We find that the means Carpenter used were beyond his authority.

We also conclude that battery is beyond the scope of Carpenter's authority. We agree with the D.C. Circuit that " 'the outer perimeters of [a supervisor's] line of duty' stop short of the physical coercion of subordinate … employees." [7] *McKinney*, 736 F.2d at 769; *see also Araujo v. Welch*, 742 F.2d 802 (3d Cir.1984). Federal manuals prohibit the use of force by supervisors against their employees regardless of its degree. *McKinney*, 736 F.2d at 769–70. We see no legitimate interest in shielding federal officials from claims of physical abuse, particularly those involving sexual overtones. Rather, a rule denying immunity for claims of battery enforces the prohibition and underscores appropriate behavior. Carpenter has shed his immunity by employing illegitimate means.

## B. Statute of Limitations

■ The Postal Service asserts alternatively that Arnold's state-law tort claims are barred by the statute of limitations. Under California law, these claims must be filed within one year of their accrual. Cal. Civ.Proc.Code § 340 (West 1987). In her

complaint, Arnold alleged that Carpenter harassed her on September 23, 1981.[8] Because she did not file this action until November 7, 1983, her claims are barred unless the statute was tolled.

California equitably tolls a statute of limitations as to a claim when the plaintiff previously has filed another claim so that there is "timely notice, and lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *Retail Clerks Union Local 648, AFL–CIO v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033 (9th Cir.1983) (quoting *Jackson v. Hayakawa*, 605 F.2d 1121, 1127 (9th Cir.1979), *cert. denied*, 445 U.S. 952, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980) (quoting *Addison v. State*, 21 Cal.3d 313, 319, 578 P.2d 941, 943–44, 146 Cal.Rptr. 224, 227 (1978))). The claims need not be identical. *Id.* at 1033. If, for example, a plaintiff possesses several legal remedies for the same harm, and reasonably and in good faith pursues one of those remedies, California will toll the limitations period for the other remedies. *See, e.g., Elkins v. Derby*, 12 Cal.3d 410, 414, 525 P.2d 81, 115 Cal. Rptr. 641 (1974). However, equitable tolling does not apply when a plaintiff has pursued a remedy as to only one of several distinct wrongs. *Aerojet General Corp. v. The Superior Court*, 177 Cal.App.3d 950, 223 Cal.Rptr. 249, 254 (1986); *Loehr v. Ventura County Community College Dist.*, 147 Cal.App.3d 1071, 195 Cal.Rptr. 576, 585 (1983).

Arnold asserts that filing her Title VII claim tolled the limitations period for her tort claims. Although sexual harassment may be redressed through a claim brought under Title VII, *Meritor Savings Bank, FSB v. Vinson*, — U.S. —, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the wrong underlying Arnold's Title VII claim is distinct

---

that Carpenter exceeded the scope of his authority, we need not consider this contention.

**6.** In reviewing a district court's dismissal of a claim, we treat all of the opposing party's allegations as true. *Otto v. Heckler*, 781 F.2d 754, 758 (9th Cir.1986).

**7.** We do not address here claims of battery against officers generally empowered to ' use

force. *See, e.g., Skolnick v. Campbell*, 398 F.2d 23 (7th Cir.1968) (deputy court marshal).

**8.** Arnold maintained in her briefs and during oral argument before this court, that Carpenter's tortious behavior continued after the September 23, 1981 incident. Even if we were to accept this contention, his behavior would have ended upon her termination in February 1982.

from that underlying her state-law tort claims. In her state-law claims Arnold seeks to vindicate not her right to be free from discrimination in the workplace, but rather her right to be free from " 'bodily or emotional injury caused by another person.' " *Otto*, 781 F.2d at 756 (quoting *Stewart v. Thomas*, 538 F.Supp. 891, 895 (D.D.C.1982)). Indeed, it is precisely because these wrongs are different that Arnold's state-law claims are not precluded by Title VII. *Id.* at 756–57.

Nor does federal policy mandate equitable tolling. Arnold was not under an obligation to delay litigation until her Title VII claims were resolved. She argues, however, that this court should encourage voluntary compliance with Title VII procedures by tolling the limitations period. The Supreme Court has rejected a similar contention. *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (statute of limitations for claim brought under 42 U.S.C. § 1981 not tolled by filing Title VII charge with EEOC). Acknowledging that Title VII proceedings often are beneficial, the Court held, nonetheless, that Congress did not intend for these proceedings to delay independent avenues of redress. *Id.* at 461, 465, 95 S.Ct. at 1720, 1722.

Because California would not permit equitable tolling and because federal policy does not mandate asserting Title VII claims before state tort claims, we conclude that Arnold is barred by the statute of limitations from pursuing her state claims.

### IV. Attorney's Fees

■ Arnold requests attorney's fees in this appeal under 42 U.S.C. §§ 2000e–5(k) and 2000e–16(d). Parties may not receive attorney's fees for an appeal if they have not succeeded on the merits of any of their underlying claims. *Jensen v. City of San Jose*, 806 F.2d 899 (9th Cir.1986) (en banc). Because Arnold has won only the right to a trial, *see United States v. 2.61 Acres of Land*, 791 F.2d 666, 672 (9th Cir.1985) (per curiam), and has not otherwise advanced the enforcement of civil rights laws, *see Jensen*, 806 F.2d at 901; *see also Manto-*

*lete v. Bolger*, 791 F.2d 784 (9th Cir.1986), *cited with approval in Jensen*, 806 F.2d at 901, she is not entitled to attorney's fees at this stage of the proceedings.

### CONCLUSION

We affirm in part and reverse in part. We affirm the dismissal of the *Bivens* claim and state-law tort claims against Carpenter. We reverse and remand the Title VII claim against the USPS for further proceedings consistent with this opinion.