Shelley SOMMATINO, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 99–16797.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 2000

Filed June 18, 2001

Mark A. O'Connor and Elizabeth C. Gianola, Horan, Lloyd, Karachale, Dyer, Schwartz, Law & Cook, Inc., Monterey, California, for the plaintiff-appellant.

Jonathan H. Levy, United States Department of Justice, Civil Division, Washington, DC, for the defendant-appellee.

Before: REINHARDT, LEAVY and SILVERMAN, Circuit Judges.

Opinion by Judge LEAVY; Partial Concurrence and Partial Dissent by Judge REINHARDT.

LEAVY, Circuit Judge:

Shelley Sommatino ("Sommatino") appeals the district court's dismissal with prejudice of her action in which she asserted claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The district court concluded that Sommatino did not state a claim under the FTCA and that the court had no jurisdiction to consider her Title VII claims because Sommatino did not file an administrative complaint. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the judgment of the district court.

A. *Background*

Sommatino was a female civilian employee of the Naval Postgraduate School in Monterey, California. According to Sommatino's allegations, one of her co-workers, Mr. Hollifield, made sexually offensive remarks to her and other female employees, and would position himself close to her to ensure contact. Hollifield frequently brushed his body against Sommatino's arms, legs, and hips. Hollifield often used loud, offensive, and vulgar language in the office.

Hollifield feigned accidental meetings outside the office for the purpose of restraining Sommatino and engaging her in private conversation. Sommatino alleged, "Given Hollifield's total disregard for authority, discipline, or respect to anyone, and his threatening conduct, plaintiff felt intimidated and fearful of physical violence. These fears existed both inside the workplace and outside the workplace when plaintiff was alone."

After complaining about Hollifield's conduct to her supervisors, Sommatino was assigned to share an office cubicle with Hollifield in October 1995. Sommatino voiced her objection, but the assignment did not change. Sommatino believed she was being retaliated against for complaining about Hollifield.

On November 30, 1995, Sommatino spoke with her Equal Employment Opportunity ("EEO") counselor, Ms. Gerry Wade, about her plight with Hollifield, the hostile environment, discriminatory conduct, and the lack of support from her superiors. Ms. Wade told Sommatino that a formal harassment complaint would be futile due to the difficulty in working with the department head, Ms. Linser. However, Ms. Wade, in a declaration, stated that at no time did she discourage Sommatino from filing an EEO complaint, and that she provided Sommatino with the forms and paper work for filing a complaint. Wade advised Sommatino to submit a memorandum each time she witnessed inappropriate behavior.

On December 1, 1995, the day after her meeting with Ms. Wade, Sommatino wrote an e-mail to her supervisor, Ms. Sweeney. In the e-mail, Sommatino stated that she had discussed with Ms. Wade the filing of three EEO complaints: one for sexual discrimination regarding Hollifield, one for racial discrimination regarding preferential treatment of a black female employee,

Ms. Reed, and one for third party sexual harassment regarding Hollifield's conduct towards Ms. Sweeney and other female employees. On December 6, 1995, Sommatino again met with Ms. Wade, who advised her to forward her complaints regarding Hollifield and Reed to her supervisors. Sommatino sent an e-mail that day to her supervisors, complaining of Mr. Hollifield's loud statement, "Goddamn it" which startled Sommatino, noting her first direct request of Hollifield to stop leaning over her desk to use the electric stapler and hole punch, and noting her objection to Ms. Reed's loud and constant talking. In a third e-mail to her supervisors on December 12, 1995, Sommatino complained that she saw Hollifield cup a female supervisor's left elbow in his right hand while saying something about going home. Sommatino's e-mail stated, "Please be advised that this could warrant another third party complaint. Also remember that I have not formally filed any complaint, but I have the basis for a first party complaint and two third party complaints. I will formally file these with Gerry tomorrow if necessary."

On December 13, 1995, Sommatino's supervisor, Ms. Sweeney, proposed that Sommatino and another worker move to an available workstation upstairs. That same day, Sommatino e-mailed the EEO counselor and stated that this proposal was unacceptable and could be taken as a retaliatory action regarding her complaints about both Hollifield and Ms. Reed. However, in early 1996 Sommatino and another worker were moved upstairs.

Later in 1996, Sommatino's therapist instructed her not to resume her work at the Naval Postgraduate School, and Sommatino left her employment.

B. *Procedural history*

Sommatino filed a claim against the government under the FTCA in June 1996.

The government rejected that claim, and in December 1997, Sommatino filed this action in federal district court under the FTCA. The government moved to dismiss for lack of subject matter jurisdiction, asserting that Title VII is the exclusive remedy for redress of federal employment-related discrimination, including sexual harassment and the creation of hostile work environment. The government acknowledged that the Ninth Circuit has created an exception to the exclusivity of the Title VII remedy for claims based upon highly personal violations beyond the meaning of discrimination; however, the government maintained that the complaint failed to allege facts sufficient to show the type of highly personal violations which would allow Sommatino to proceed under the FTCA. The district court dismissed the complaint with leave to amend, concluding that Title VII provided her exclusive remedy.

Sommatino amended her complaint, adding more detailed allegations. The government again moved to dismiss, on the grounds that Title VII was her exclusive remedy. The district court again dismissed the complaint with leave to amend, stating that the allegations "describe a classic case of sexual discrimination through the creation and maintenance of a hostile work environment," and, "If Sommatino cannot assert a Title VII claim within the time provided, this action will be dismissed with prejudice."

Sommatino filed a second amended complaint, claiming jurisdiction under both the FTCA and Title VII. The government moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) (lack of subject matter jurisdic-

tion) because Sommatino did not exhaust the administrative complaint requirements pursuant to EEOC regulations. Sommatino opposed the motion, arguing that her e-mail messages to the EEO counselor were sufficient to satisfy the administrative complaint requirements, and, in any event, she was mislead and discouraged from filing a complaint by the EEO counselor and should be equitably relieved from the filing requirements.

The district court dismissed the second amended complaint with prejudice for lack of subject matter jurisdiction. The court concluded that the filing of an EEOC administrative complaint was a jurisdictional prerequisite to a Title VII action, and Sommatino did not comply with this requirement. Sommatino timely appealed.

### C. *Standard of Review*

The district court's dismissal for lack of subject matter jurisdiction is reviewed de novo. *See Brady v. United States*, 211 F.3d 499, 502 (9th Cir.2000).

### D. *Discussion*

#### 1. *Title VII claims*

The first question is whether the district court erred in determining that it had no jurisdiction to consider Sommatino's Title VII claims because she did not substantially comply with the EEOC claim presentation requirements.[1] We conclude that the district court did not err.

■ In order to bring a Title VII claim in district court, a plaintiff must first exhaust her administrative remedies. 42 U.S.C. § 2000e–16(c); *Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir.1995) (citing

---

1. The government also argues that the district court lacked subject matter jurisdiction because Sommatino failed to name the proper defendant. In a Title VII action, the proper defendant is the head of the department,

agency, or unit, as appropriate. 42 U.S.C. § 2000e–16(c). Because we conclude on other grounds that the district court lacked subject matter jurisdiction, we do not reach the merits of this argument.

*Brown v. General Servs. Admin.*, 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). Under the Title VII statutory and regulatory scheme, a federal employee must notify an EEO counselor of discriminatory conduct within 45 days of the alleged conduct, and then, if the matter is not resolved, the employee may submit a formal administrative complaint. *See* 29 C.F.R. § 1614.105 (pre-complaint processing); 29 C.F.R. § 1614.106 (individual complaints).

The Supreme Court has held that the failure to file a timely EEOC administrative complaint is not a jurisdictional prerequisite to a Title VII claim, but is merely a statutory requirement subject to waiver, estoppel and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). A number of our circuit cases have also held that the administrative exhaustion requirements under Title VII are not jurisdictional but are conditions precedent to filing an action which a defendant may waive or be estopped from asserting. *Vinieratos v. United States*, 939 F.2d 762, 768 n. 5 (9th Cir.1991); *Stache v. Int'l Union of Bricklayers*, 852 F.2d 1231, 1233 (9th Cir.1988); *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1172 (9th Cir.1986).

■ However, our case law also holds that substantial compliance with the presentment of discrimination complaints to an appropriate administrative agency *is* a jurisdictional prerequisite. As we have explained, "[t]he jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation." *Paige v. State of California*, 102 F.3d 1035, 1041 (9th Cir.1996) (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.1994)). The district court has jurisdiction over any charges of discrimination that are "like or reasonably related" to the allegations in the EEOC charge, or that fall within the "EEOC investigation which can reasonably be expected to grow out the charge of discrimination." *Deppe v. United Airlines*, 217 F.3d 1262, 1267 (9th Cir.2000) (citing *Yamaguchi v. United States Dep't of the Air Force*, 109 F.3d 1475, 1480 (9th Cir.1997) and *Farmer Bros.*, 31 F.3d at 899); *accord Stache*, 852 F.2d at 1234.[2] Our cases also instruct that abandonment or failure to cooperate in the administrative process prevents exhaustion and precludes judicial review. *See Greenlaw*, 59 F.3d at 1000; *Tanious v. IRS*, 915 F.2d 410, 411 (9th Cir.1990).

In cases where a plaintiff has never presented a discrimination complaint to the appropriate administrative authority, we have held that the district court does not have subject matter jurisdiction. *See Blank v. Donovan*, 780 F.2d 808, 809 (9th Cir.1986); *Scott v. Perry*, 569 F.2d 1064, 1065–66 (9th Cir.1978).

■ Upon de novo review,[3] we conclude Sommatino did not comply with the administrative claim requirements of Title VII. Sommatino's verbal complaints to the EEO counselor and her e-mails are insufficient to constitute substantial compliance with the claim presentment requirements.[4]

---

**2.** The EEOC administrative complaint is to be construed "with the utmost liberality." *Farmer Bros.*, 31 F.3d at 899 (quoting *Kaplan v. International Alliance of Theatrical and Stage Employees*, 525 F.2d 1354, 1359 (9th Cir.1975)).

**3.** In reviewing a motion to dismiss based on lack of subject matter jurisdiction pursuant to

Fed.R.Civ.P. 12(b)(1), the court may consider affidavits or any other evidence properly before the court. *American Medical Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

**4.** The first e-mail, dated December 1, 1995, stated:

As you know I spoke with Jerry Wade and Julie Carpenter at length yesterday. With Ms. Wade I discussed the filing of 3 EEO complaints: 1 for sexual discrimination based upon the fact the [sic] Mr. Hollifield as the only civilian male employee in this department definitely receives preferential and "special" treatment. Ms. Wade is well aware of Mr. Hollifield's reputation and the problems he presents for his fellow workers. I also discussed with her the possibility of a racial discrimination complaint because Ms. Reed as the only black civilian employee in this department also receives preferential and "special" protective treatment. Both of these employees get away with multiple and daily transgressions of rules and regulations we are all supposedly bound by.

Ms. Wade informed me that I could file a "3rd. party sexual harassment" complaint against Mr. Hollifield. The specific incident concerned involves you. Earlier this week you were standing at my desk discussing I believe my attending the PAT team meeting. Mr. Hollifield walked to my desk, gripped your elbow in an intimate manner and told you he loved your new hairstyle. While this may not have offended you it did most certainly offend me. His action and words are espressly [sic] forbidden by the school mandated sexual harassment policy. He also made comments of an off color nature during the training session conducted by Pat Rhoten. This behavior offends me as well as others and should not be tolerated.

Ms. Wade suggested I submit a formal memo each time I witness any of this behavior, formally documenting on a daily basis if necessary. At this time I choose not to do that but will take this opportunity to identify some specific behaviors on the part of these 2 employees which cause me as well as others in the department undo [sic] stress.

Ms. Reed: talks constantly out loud at her desk, mostly to herself, often to Judy this is very distracting to those of us in the room attempting to work. Is prone to frequent loud angry outbursts—directed at "they" or "'them"—loudly accusing "people" of stealing things from her desk or bothering her stuff, or sitting an [sic] their butts and just getting by because they are io [sic] lazy to work. This is very disturbing to those of us attempting to concentrate on our work and causes me concern about her paranoid tendencies. Often talks to others while eating, even to customers on the phone, when her speach [sic] is so muffled it's incomprehensible. Has her "life companion"/friend Barbara frequently in the office for long periods of time—this is disruptive. And why is this person allowed to attend every office luncheon when she has no personal relationship with others in the office. Has frequent phone conversations with this same person whereafter [sic] she slams down the phone receiver loudly exclaiming about the stupidity of this person. All of this is most disruptive to me. And I am seriously concerned as to why this behavior is tolerated. Then there is her habit of playing the "hearts game" till after 7:00 AM, often when I leave for my lunch at 11:30 she starts playing, when I return she is still playing and continues to do so through her lunch until after 1:00—giving her 2 hour lunches quite frequently.

All of this behavior is noticed by others and is very detrimental to the moral [sic] of the office. I know that you are personally aware and concerned about this problem. Why is this tolerated? I want to know—and according to Ms. Wade I have a right to an answer regarding my concerns.

Because of time constraints I will have to deal with my issues with Mr. Hollifield in another message. Please understand that this action on my part is something I feel I must do to tryto [sic] alleviate some of the tremendous stress I am currently feeling in this working environment.

The second e-mail, dated December 6, 1995, stated:

Per my meeting with Jerry Wade this morning she advised me to forward this memo voicing complaints re situations in this working environment which cause me undo [sic] stress.

1. Yesterday afternoon while working at my desk I heard Mr. Hollifield who happened to be at his desk loudly say "Goddamn it"—it startled me, and I questioned Fred Luna who had just come to the copier if he had heard it and what had happened. He say [sic] he heard it but didn't care what happended [sic].

2. I finally had the nerve yesterday to ask Mr. Hollifield to please stop leaning over me at my desk to use the electronic stapler and hole punch. He had been doing this for some time and it always bothered me as I don't like people being physically close to me as well as the fact that it interrupted my work and always made me uneasy especially since he sometimes touched me in this process.

*Cf. Cooper v. Bell,* 628 F.2d 1208, 1211 (9th Cir.1980) (grievance and letter of resignation do not constitute a plaintiff's employment discrimination charge). The text of the e-mails belies Sommatino's argument. For example, in the third e-mail to her supervisors dated December 12, 1995, Sommatino states, "Also remember that I have not formally filed any complaint, but I have the basis for a first party complaint and two third party complaints. I will formally file these with Gerry tomorrow if necessary."

While it is true that an employment discrimination charge is to be construed liberally and an employee need not make allegations with legal precision, the charge must at least be sufficient to notify the agency that employment discrimination is claimed. *See Cooper,* 628 F.2d at 1211. The agency can then investigate, attempt conciliation, and, if necessary, engage the administrative process. *Id.* EEO counselors and the EEOC have a measure of expertise and familiarity with employment disputes that federal judges cannot readily match. *Vinieratos,* 939 F.2d at 775. Sommatino took no actions to engage the administrative process beyond her verbal complaints and e-mails.

 Sommatino argues that because the EEO counselor discouraged her from filing an administrative complaint and told her that the time period for filing a complaint had expired, the government should be estopped from asserting Sommatino's lack of technical compliance. Equitable estoppel and equitable tolling can extend the deadline for filing when equity so requires. *See Zipes,* 455 U.S. at 398, 102 S.Ct. 1127. However, equitable remedies are unavailable in federal court when the record shows that no administrative filing was ever made. *See Ross v. United States Postal Service,* 696 F.2d 720, 722 (9th Cir. 1983) (equitable considerations must first be presented to the administrative agency).

3. I have yet to notice a change in Ms. Reed's behavior regarding the loud and constant talking which is very disruptive to others in my office. Yesterday was particularly bad, with both Carol and myself near to tearing our hair out. Ms. Reed displays a total lack of respect for others in the office with her behavior—and is practically combative with me.

I am sorry if you see me as a troublemaker for that is truly not the case. I am just tired of these conditions which constantly disrupt my work and in my opinion create a unhealthy workplace. Please acknowledge receipt of this message.

The fourth e-mail, dated December 13, 1995, stated in part:

In response to my e-mail of yesterday to Lt. Allen, Shirley Linser and Jane Sweeney in which I mentioned my problem with Mr. Hollifield leaning over me at my desk to use the stapler; and the fact that I had not noticed a diminishment in the disruptive behavior of Ms. Reed which adversely affected Carol and myself this transpired:

This morning Jane took me aside and proposed this solution: There are 2 workstations available upstairs in Purchasing, and the suggestion was that we (Carol and me) move upstairs. This was purportedly to solve the issue I supposedly had with the noise of the copier (never mentioned by me), and to relieve us of the noise of the office.

. . . . .

I could easily take this as a "retalitory [sic] action" because of my actions and complaints. I also expect that if I refuse this move mgmt [sic] can then say they offered a solution which I refused, therefore their responsibility to correct this situation is fulfilled and I must deal with the consequences. I have been there before.

I would like your advise [sic] as to my right to safely refuse this proposed move while still expecting some remedy to the current situation with Ms. Reed. To me it's simple either counsel Ms. Reed about the effect of her behavior on her other office workers, or move both her and Ms. Baldino to another location. In reality both options are much simpler than that proposed by mgmt [sic].

We affirm the district court's judgment that it lacked subject matter jurisdiction over Sommatino's Title VII claims.

## 2. The FTCA claims

■ The second question is whether the district court erred in determining that Sommatino did not allege highly personal violations which would be cognizable under the FTCA. We conclude that the district court did not err.

The government first asserts that we have no jurisdiction to hear Sommatino's argument that the district court erred in dismissing the FTCA claims because Sommatino did not appeal the district court's earlier orders dismissing her claims under the FTCA. We reject this argument because under the final judgment rule embodied in 28 U.S.C. § 1291, the parties generally may appeal only the final decisions of the district court, with certain narrow exceptions. Once final judgment has been entered, "claims of district court error at any stage of the litigation may be ventilated." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994).

In *Brown v. General Services Administration*, 425 U.S. at 829–832, 96 S.Ct. 1961, the Supreme Court held that section 717 of Title VII, 42 U.S.C. § 2000e–16, provides the exclusive, pre-emptive remedy for federal employees seeking to redress employment discrimination. The Court stated that any other result would create a risk that section 717 "would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible." *Id.* at 833, 96 S.Ct. 1961. The Court cited the FTCA as an example. *Id.* at 834, 96 S.Ct. 1961.

In *Brock v. United States*, 64 F.3d 1421, 1423–24 (9th Cir.1995), we held that Title VII did not pre-empt a FTCA claim if the conduct alleged is a highly personal violation beyond the meaning of workplace discrimination. The plaintiff in *Brock*, an employee of the Forest Service, alleged that during overnight field outings she was forced to share sleeping accommodations with her supervisor, and that during these outings, her supervisor raped her. We held that Title VII was not her exclusive remedy and that her complaint stated separately actionable claims under the FTCA for negligent supervision of the supervisor and coworkers. *Brock*, 64 F.3d at 1424.[5]

In two cases prior to *Brock*, we held that Title VII remedies may be supplemented by state law tort claims when the alleged violations have gone beyond discrimination in the workplace and involve physical or emotional injuries that are highly personal. In *Otto v. Heckler*, 781 F.2d 754 (9th Cir. 1986), a federal employee filed a Title VII action and state law tort claims against her supervisor. She alleged that her supervisor committed common law torts including assault, invasion of privacy, intentional infliction of emotional distress and defamation. She alleged that her supervisor followed her, defamed her, harassed her with phone calls, intruded into her married life, and the resulting mental distress caused her to suffer a miscarriage. We held that the supervisor was not immune from state law tort claims because his actions of following, defaming, and harassing the plaintiff with telephone calls was not conduct within the scope of his employment duties. *Otto*, 781 F.2d at 758.

In *Arnold v. United States*, 816 F.2d 1306 (9th Cir.1987), a federal postal work-

---

**5.** At the time the action in *Brock* was filed, victims of sex discrimination could not receive compensatory or punitive damages under Title VII, but after the action was filed, Title VII was amended to provide for compensatory and punitive damages in the case of intentional discrimination. *Brock,* 64 F.3d at 1424 n. 2.

er brought a Title VII action and state law tort claims against her postmaster supervisor. She alleged that the postmaster told her that the position of mailhandler was a "man's" job and he would not put any woman, especially the plaintiff, into the position. She alleged that he then placed his chair directly in front of her and fondled her knees. When she attempted to leave, he blocked the door preventing her from leaving. He then held her against his body, kissed her, and fondled her. The plaintiff alleged that he continued to make sexual advances after this incident. We held that the district court erred in dismissing the state law tort claims against the postmaster because battery is beyond the scope of a supervisor's authority, noting "We see no legitimate interest in shielding federal officials from claims of physical abuse, particularly those involving sexual overtones. Rather, a rule denying immunity for claims of battery enforces the prohibition and underscores appropriate behavior." *Arnold*, 816 F.2d at 1312.

Sommatino argues that she has alleged highly personal violations beyond workplace discrimination, relying upon *Brock*, *Arnold*, and *Otto*. Sommatino's allegations regarding Hollifield's intentional touching and his sexually suggestive and vulgar remarks are typical of the offensive workplace behavior giving rise to an action to remedy a hostile work environment. *See, e.g., Montero v. AGCO Corp.*, 192 F.3d 856, 858–860 (9th Cir.1999); *Anderson v. Reno*, 190 F.3d 930, 933 (9th Cir.1999); *Draper v. Coeur Rochester*, 147 F.3d 1104, 1105–1106 (9th Cir.1998). Hollifield's conduct, while

highly offensive, is not of the order of magnitude of the personal violation of rape in *Brock*, the forced sexual assaults in *Arnold* (forced kissing, fondling, and blocking the door), and the following and phone calling at home in *Otto*. Moreover, the question presented in *Arnold* and *Otto* was whether the plaintiff could supplement her Title VII action with state law tort claims against the individual offender, which is not the question presented in this case.

Sommatino alleged that she felt fearful of physical violence both inside and outside the workplace, but these allegations are not supported by allegations of specific harm directed at Sommatino.[6] *Cf. Kortan v. California Youth Authority*, 217 F.3d 1104, 1110 (9th Cir.2000) (supervisor's offensive sexual insults were not directed at plaintiff and were not of the order of magnitude of the conduct in this circuit's hostile working environment cases).

We affirm the district court's ruling that Sommatino's complaint did not state a claim under the FTCA.

AFFIRMED.

REINHARDT, Circuit Judge, concurring in part and dissenting in part:

While I agree with the majority's analysis of the Title VII issue and concur in that portion of the opinion, unfortunately, this case cannot be disposed of solely on that basis. The real issue on appeal is the FTCA claim, and I believe that (1) it was neither waived nor forfeited, and (2) the

---

6. Sommatino alleged that she witnessed "inappropriate behavior" on the part of Hollifield toward a female co-employee. She alleged that Hollifield accosted a woman when he gave her a ride in his car. Sommatino alleged that the woman feared Hollifield and would never be alone with him, and to appease Hollifield, the woman started bringing him breakfast in the morning. Sommatino also alleged that Hollifield made forceful sexual advances upon a female co-worker, but no names or dates are alleged. Sommatino alleged that Hollifield threatened to kill this female employee if she reported him, but no additional specific allegations or supporting declarations are provided. Both of these allegations concern conduct directed at others, not Sommatino.

plaintiff states a claim that survives a motion to dismiss. It is only on the failure to state a claim question that the majority and I disagree.

In the first amended complaint, Sommatino sets forth two claims arising under the FTCA. In the first count, for Sexual Harassment/Intentional Infliction of Emotional Distress, the plaintiff alleges that the conduct involved, including the physical contact, "was not based on the type of assaultative behavior excluded from the FTCA." The second count, also alleging an FTCA violation, is for "Negligent Supervision/Negligent Infliction of Emotional Distress."

In her first claim, Sommatino alleges that Hollifield "frequently brushed against plaintiff's arms, legs, and hips. On one specific occasion, he came up behind plaintiff ... reached both arms around plaintiff, over plaintiff's head and down her body, intentionally brushing her breasts as he did so." Sommatino further alleges that Hollifield, on meeting her outside the office, would "restrain her and engage her in private conversation," and that on other occasions he would brush his arms against her breasts. Sommatino asserts that these acts placed her in fear of her safety. In her second claim, Sommatino alleges that she was forced into close physical contact with Hollifield because of the negligent acts of her supervisors.

The majority concludes that "Hollifield's conduct, while highly offensive, is not of the order of magnitude of the personal violation[s]" in our other sex-harassment FTCA cases. See Brock v. United States, 64 F.3d 1421 (9th Cir.1995); Arnold v. United States, 816 F.2d 1306, (9th Cir. 1987); and Otto v. Heckler, 781 F.2d 754 (9th Cir.1986). However, in Arnold, we

held that a plaintiff stated a claim under the FTCA by alleging that a government employee fondled her knees, blocked her exit from his office, and held the plaintiff close to his body, kissing and fondling her. See id. at 1307. Here, Sommatino has alleged that Hollifield rubbed his arms against her breasts, brushed against her legs, arms and hips, and restrained her outside the workplace. These acts, as the district court itself recognized, are "sufficient to meet the 'highly personal' test" set forth in Brock.[1] Moreover, Sommatino's allegations that she was in fear of physical violence are, in my opinion, sufficient for purposes of this appeal, even though her fear was based on her knowledge of Hollifield's conduct towards other similarly situated female employees. Certainly, judgment for the government at the dismissal stage was premature.

I do not believe that the majority opinion establishes a principled line between conduct that gives rise to an FTCA claim and conduct that does not. To the contrary, it adds to whatever confusion may have been engendered by Brock, Arnold, and Otto. In my view, we can and should clarify, not obfuscate, the question Sommatino's complaint raises. I would adopt a simple test for determining when sexual harassment gives rise to an FTCA claim: if the conduct rises to the level of an assault, it meets the standard for asserting such a claim. If it does not, an FTCA claim may not be asserted. Here, Hollifield's alleged conduct plainly constitutes an assault. Thus, it may properly serve as the basis for an FTCA claim. Accordingly, I would reverse and remand to the district court for further proceedings on Sommatino's FTCA claims.

While the approach I would adopt might, in the majority's view, open the

---

1. The district court erroneously held that Sommatino could not state a claim based on negligent supervision, and dismissed her

FTCA claim. Brock expressly permits her to maintain an action against her supervisors. 64 F.3d at 1424.

714

door to a host of duplicative claims in sex discrimination cases, that consequence is highly unlikely. As the majority points out, Congress now permits damages in Title VII cases, removing the most obvious reason for bringing an action under the FTCA. Furthermore, plaintiffs proceeding under Title VII receive benefits unavailable to plaintiffs proceeding in tort: pre-litigation administrative remedies, pre-trial proof of discrimination using a burden-shifting analysis, the opportunity to put forward disparate impact evidence, and a variety of other mechanisms enabling plaintiffs to raise a cognizable claim of discrimination. Finally, were there floodgates to be opened, they would surely have been opened by *Brock, Otto,* and *Arnold.* Despite those cases, however, the courts in this circuit have not been deluged with FTCA claims. Establishing a principled rule governing FTCA claims arising out of sexual harassment might even reduce, rather than increase, the small number of such causes of action currently being filed. Accordingly, I respectfully dissent from Section D.2 of the opinion.